IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| CHESTER O'QUINN, #K92939,<br><br>    Plaintiff,<br><br>v.<br><br>C/O VANDERHOVE, and<br>C/O DUVALL,<br><br>    Defendants. | Case No. 19-cv-01010-NJR |

# MEMORANDUM AND ORDER

**ROSENSTENGEL, Chief Judge:**

Plaintiff Chester O'Quinn, an inmate of the Illinois Department of Corrections ("IDOC") who is currently incarcerated at Dixon Correctional Center, brings this civil action pursuant to 42 U.S.C. § 1983 and the Americans with Disabilities Act, 42 U.S.C. § 21312, *et seq.*, for events that occurred while at Pinckneyville Correctional Center ("Pinckneyville"). He seeks monetary damages and injunctive relief.

The Complaint is now before the Court for preliminary review pursuant to 28 U.S.C. § 1915A. Under Section 1915A, any portion of a complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or requests money damages from a defendant who by law is immune from such relief must be dismissed. 28 U.S.C. § 1915A(b). At this juncture, the factual allegations of the *pro se* Complaint are to be liberally construed. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009).

## COMPLAINT

O'Quinn states he has been diagnosed as seriously mentally ill and has multiple physical disabilities. (Doc. 1, p. 3). He also suffers from diabetes, hypertension, neural disorder, and degenerative disk disease. There are times he can barely walk, and he uses a quad cane to get around. In the Complaint, he alleges that the following took place between July 1, 2017, and January 31, 2018, at Pinckneyville:

Correctional Officer Duvall placed O'Quinn in segregation in retaliation for writing grievances. (*Id.* at p. 4). While in segregation, on September 27, 2017, O'Quinn asked for a crisis team member because he was feeling suicidal. Lieutenant Pierce ignored the request and accused O'Quinn of not being serious. An hour passed, and O'Quinn told Correctional Officer Martin he was suicidal and wanted to see a crisis team member. Martin also ignored him, and about fifteen minutes later, O'Quinn attempted to kill himself. Martin came to the cell, cuffed O'Quinn, and removed the noose. Martin then dragged O'Quinn to the front wing, while O'Quinn was falling and crying out in pain. Martin handed O'Quinn off to Correctional Officer Vanderhove who took him to another wing to speak with a mental health professional. During the walk, Vanderhove ignored his disabilities and did not provide him a cane to assist in walking. He dragged O'Quinn when he fell and twisted the handcuffs causing injuries. Vanderhove then took O'Quinn to a room, chained him to a stool, and started beating him. (*Id.*). Mental Health Professional Rose came in the room, and she, Lieutenant Pierce, and Vanderhove took O'Quinn to the healthcare unit. (*Id.* at p. 5). O'Quinn had to walk a half mile without his cane to the healthcare unit. During the walk, he fell several times and both officers

continually twisted his arms. When O'Quinn was taken to crisis watch, Pierce and Vanderhove again twisted and grinded the handcuffs into his wrists causing him to bleed. They also slammed his head against the door before entering the crisis unit. (*Id.*).

While on crisis watch, he was not provided the same meals as the general prison population. (*Id.* at p. 6). Specifically, he did not receive turkey with all of the fixings on Thanksgiving. Correctional Officer Huff came to his cell and ate turkey and pie in front of him. The cold, hard, stale food he was fed contributed to stomach problems, rectal bleeding, and mental anguish. O'Quinn was forced to sleep on a hard plastic contraption and not given a mattress or bed, hurting his back and neck. He was unable to sleep. The cell was dirty and had crickets and spiders. O'Quinn was also not allowed to shower or go outside. Mental health staff told Dr. Butler and Christine Brown about his conditions and treatment, but they did nothing to help him. (*Id.*).

## PRELIMINARY DISMISSALS

The Complaint raises a laundry list of numerous claims against several individuals, but the case caption only lists Correctional Officers Duvall and Vanderhove as defendants. The Court will not treat parties not listed in the caption as defendants, and any claims against them are dismissed without prejudice. *See Myles v. United States*, 416 F.3d 551, 551–52 (7th Cir. 2005) (to be properly considered a party a defendant must be "specif[ied] in the caption").

The Court notes that it appears that the Complaint may be missing pages. O'Quinn is advised that under Federal Rule of Civil Procedure 15, he may file an amended complaint once as a matter of course anytime before the responsive pleading is served.

An amended complaint supersedes and replaces the original complaint, rendering the original complaint void. *See Flannery v. Recording Indus. Ass'n of Am.*, 354 F.3d 632, 638 n.1 (7th Cir. 2004). Thus, an amended complaint must stand on its own, without reference to any previous pleading. An amended complaint is also subject to review pursuant to 28 U.S.C. § 1915A. If he files an amended complaint, O'Quinn should keep in mind that a complaint violates the rules of joinder by throwing all of his complaints together in a single complaint. FED. R. CIV. P. 18-21; *Wheeler v. Wexford Health Sources, Inc.*, 689 F.3d 680 (7th Cir. 2012) ("A litigant cannot throw all of his grievances, against dozens of different parties, into one stewpot."). He must, instead, pursue related claims against a single group of defendants in his amended complaint.

## DISCUSSION

Based on the allegations in the Complaint, the Court finds it convenient to designate the claims in this case into the following three Counts:

> **Count 1:** First Amendment claim against Duvall for placing O'Quinn in segregation in retaliation for filing grievances.
>
> **Count 2:** Eighth Amendment claim against Vanderhove for the use of excessive force.
>
> **Count 3:** Americans with Disabilities Act ("ADA") and Rehabilitation Act ("RA") [1] claim against Vanderhove for ignoring O'Quinn's disabilities and denying him the use of his cane when escorting him through Pinckneyville.

The parties and the Court will use these designations in all future pleadings and orders,

---

[1] O'Quinn does not mention the Rehabilitation Act, 29 U.S.C. § 794(a), in his Complaint, but the Seventh Circuit has cautioned that claims of discrimination on account of a disability, especially those from a *pro se* prisoner litigants, should be analyzed by the district court in light of both the ADA and RA, whether or not the plaintiff has assert a claim under the latter statute. *Norfleet v. Walker*, 684 F.3d 688, 690 (7th Cir. 2012).

unless otherwise directed by a judicial officer of this Court. **Any other claim that is mentioned in the Complaint but not addressed in this Order is considered dismissed without prejudice as inadequately pled under** *Twombly*.[2]

### Count 1

O'Quinn's claim that Duvall retaliated against him for filing grievances by placing him in segregation survives preliminary review. *See Pearson v. Welborn*, 471 F.3d 732, 738 (7th Cir. 2006).

### Count 2

O'Quinn alleges that on September 27, 2017, Vanderhove used excessive force by unnecessarily twisting his handcuffs and arms and dragging him through Pinckneyville. Vanderhove also beat in a room him while waiting for a mental health professional to arrive and slammed his head against a door when entering the crisis unit. These allegations are also sufficient for Count 2 to proceed against Vanderhove. *See Wilkins v. Gaddy*, 559 U.S. 34 (2010); *DeWalt v. Carter*, 224 F.3d 607, 619 (7th Cir. 2000).

### Count 3

"In order to make out a prima facie case of discrimination under both the ADA and the Rehabilitation Act, a plaintiff must show: (1) that he suffers from a disability as defined in the statutes, (2) that he is qualified to participate in the program in question, and (3) that he was either excluded from participating in or denied the benefit of that program based on his disability." *Novak v. Bd. of Trustees of S. Ill. Univ.*, 777 F.3d 966, 974

---

[2] *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (an action fails to state a claim upon which relief can be granted if it does not plead "enough facts to state a claim to relief that is plausible on its face").

(7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)).

O'Quinn claims that Vanderhove ignored his permits and disabilities and denied him his cane when escorting him throughout Pinckneyville on September 27, 2017. O'Quinn has failed to state a plausible ADA and RA claim. Individual employees of IDOC cannot be sued under the ADA or Rehabilitation Act; the proper defendant is the relevant state department. *Jaros v. Ill. Dep't of Corr.*, 684 F.3d 667, 670 (7th Cir. 2012). According to the Complaint, IDOC has provided O'Quinn with reasonable accommodations for his disabilities by providing permits and a cane. Accordingly, Count 3 is dismissed.

## NOTICE

O'Quinn has included a section in his Complaint entitled "Notice." (Doc. 1, p. 1). In the Notice, he requests the preservation of all video evidence from September 20, 2017, through January 30, 2018. The duty to preserve evidence relevant to litigation is well recognized." *In re Pradaxa (Dabigatran Etexilate) Prod. Liab. Litig.*, No. 12-md-02385-DRH-SCW, 2013 WL 5377164, at *3 (S.D. Ill. Sept. 25, 2013). A party has a duty to preserve evidence when he knows, or should have known, that litigation is imminent. *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 681 (7th Cir. 2008). This duty attaches when the defendant is put on notice of impending litigation. *Motel 6*, 534 F.3d at 681; *Langley by Langley v. Union Elec. Co.* 107 F. 3d 510, 514 (7th Cir. 1997) (stating that "from the initiation of the suit, appellant has been obliged to preserve evidence"). Upon service of the Complaint, which includes the request for evidence preservation, Defendants will be on notice of the litigation and will have the duty to preserve information relevant to

O'Quinn's claims. Accordingly, the request is denied as moot.

## MOTION FOR RECRUITMENT OF COUNSEL

O'Quinn has also filed a Motion for Recruitment of Counsel (Doc. 3), which is denied.[3] In the motion, he discloses several efforts to obtain counsel and includes declination letters from six different law firms. Accordingly, O'Quinn has demonstrated reasonable efforts to locate counsel on his own without success. With respect to his ability represent himself, O'Quinn states he is need of counsel because of his physical disabilities. When he writes, he is in excruciating pain and can only write for seven to ten minutes per day. He also suffers from short term memory loss. Nonetheless, the Court finds that O'Quinn is capable of proceeding *pro se,* at least for now. He has already prepared a Complaint that survived screening and has demonstrated an ability to construct coherent sentences and relay information to the Court. Additionally, O'Quinn has filed over ten cases in this district and has experience litigating in federal court. This straightforward case is currently proceeding on two claims against two defendants and given the early stage of litigation, it is difficult to accurately evaluate the need for assistance of counsel. Should his situation change as the case proceeds, he may file another motion setting forth all facts that support his request for relief.

## DISPOSITION

For the reasons set forth above, the Complaint survives preliminary review pursuant to 28 U.S.C. § 1915A. **Count 1** shall proceed against **Duvall**, and **Count 2** shall

---

[3] In evaluating O'Quinn's Motion for Recruitment of Counsel, the Court applies the factors discussed in *Pruitt v. Mote,* 503 F.3d 647, 654 (7th Cir. 2007) and related authority.

proceed against **Vanderhove.** The Motion for Appointment of Counsel (Doc. 3) is **DENIED** without prejudice.

The Clerk of Court shall prepare for **Duvall** and **Vanderhove**: (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the Complaint, and this Memorandum and Order to each defendant's place of employment as identified by O'Quinn. If a defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that defendant, and the Court will require that defendant pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

With respect to a defendant who no longer can be found at the work address provided by O'Quinn, the employer shall furnish the Clerk with that defendant's current work address, or, if not known, his or her last known address. This information shall be used only for sending the forms as directed above or for formally effecting service. Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

If judgment is rendered against O'Quinn, and the judgment includes the payment of costs under Section 1915, he will be required to pay the full amount of the costs.

Finally, O'Quinn is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not independently investigate his whereabouts. This shall be done in writing and not

later than **7 days** after a transfer or other change in address occurs. Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution. *See* FED. R. CIV. P. 41(b).

**IT IS SO ORDERED.**

DATED:   April 23, 2020

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**

### NOTICE TO PLAINTIFF

The Court will take the necessary steps to notify the appropriate defendants of your lawsuit and serve them with a copy of your complaint. After service has been achieved, the defendants will enter their appearance and file an Answer to the complaint. It will likely take at least **60 days** from the date of this Order to receive the defendants' Answers, but it is entirely possible that it will take **90 days or more.** When all of the defendants have filed an Answer, the Court will enter a Scheduling Order containing important information on deadlines, discovery, and procedures. O'Quinn is advised to wait until counsel has appeared for the defendants before filing any motions, to give the defendants notice and an opportunity to respond to those motions. Motions filed before defendants' counsel has filed an appearance will generally be denied as premature. O'Quinn need not submit any evidence to the Court at his time, unless otherwise directed by the Court.